The Honorable, the judges of the United States Court of Appeals for the Fourth Circuit. Thank you. You can be seated. It's always a pleasure to have two former clerks come and argue cases. I'm glad to have both of you. All right, Mr. Carpenter, once again you lead on. May it please the court. The North Carolina Code has three burglary offenses that qualify as generic burglary under the Taylor definition. First degree burglary, second degree burglary, and burglary with explosives. What we're dealing with here with Section 1454 is a much less serious and somewhat unusual offense of breaking or entering. Under state law, that offense is a Class H felony, which is the second lowest level of felony offense. And for a first-time offender, it carries a recommended sentence of just five months in jail. This low-level offense is not a violent felony in light of because the text of the statute does not require an unlawful entry and because the state cases, the state courts interpret the offense so broadly that it sweeps in non-violent shoplifting-like offenses. The analysis in this case has to begin with the Taylor decision, which first set out the elements of generic burglary. In the aftermath of that decision, a circuit split emerged on the question of whether the unlawful entry element under Taylor required something more than merely felonious intent at the time of entry. This court addressed that question in the Bowden decision, which involved this very same North Carolina statute. And it concluded that felonious intent at the time of entry was by itself enough to The Sixth Circuit addressed the very same question in the Throneburg decision in addressing a Michigan statute that likewise required entering but not breaking. And it found that felonious intent at the time of entry was not enough to bring the statute within the Taylor definition. Both of those cases remained good law until the Supreme Court resolved this issue in the Day Camp case in the context of explaining why the California statute at issue there did not qualify as generic burglary. Well, the basic element is what? We're missing unlawful entry in both of these statutes, California and in North Carolina, right? Absolutely. And the California statute, just like this North Carolina statute, required felonious intent at the time of entry. So under the logic of Bowden, that would have been enough. Well, set aside Bowden. Why don't we look at how the State Supreme Court has construed its statute to determine its element? Yes, we look at how the state courts interpret and apply the law. Supreme Court, the highest court of the state. We look at, this court looks regularly at all courts in the state. Certainly in the Aparicio-Sorio and the Inbank decision, there was a conflict between the way the intermediate appeals courts and the state's highest courts had defined the elements of the resisting arrest. Let me get right to it. Why don't you tell us about Boone? Boone seems to say that you have to have, to violate that statute, you have to have unlawful entry. What Boone, Boone absolutely adds a without consent element onto the statute. It's not there in the text, but it's superimposed by the decision in Boone. The problem is that without consent element, as defined in Boone, and then as interpreted and applied by the state's subsequent decisions interpreting and applying Boone, do not bring that element into correspondence with the generic unlawful entry element. And the reason, if you look at Boone, it says that, it says you must show a lack of consent. It further says that can be shown by acts after the initial entry that render the initial consent void ab initio. You're probably going to ask a question. It does say, well it's a fairly cryptic footnote, and it says we note in passing that there may be occasions when subsequent acts render the consent void ab initio. And it's a little hard to understand what that means, but we know what it can't mean because we know how Boone held here. Right? Yes. And what it can't mean is, so what it does mean is that you're right, it's cryptic. And so that is what SDR and Rollins and the state intermediate appeals court cases are grappling with. They are looking at this North Carolina decision in Boone and saying how should we interpret this cryptic footnote with respect to this North Carolina statute. They interpret that void ab initio doctrine broadly. Certainly Boone is cryptic and it would have been interpreted a different way. Certainly if the U.S. Attorney's Office had the decision, they would have interpreted it a different way. And it may be that the three of you would have interpreted it a different way. But the state courts in North Carolina are charged with interpreting the state Supreme Court's decision in Boone, and they have interpreted the void ab initio doctrine broadly so that any act of theft once inside a store renders the initial consent void ab initio. That is black letter law in North Carolina. I'm not sure I agree with your characterization. Or that whatever the circumstances might be that call into play the footnote, which seems to me just a way of covering the bases, we know what it can't be. And it can't be facts similar to those here because that's exactly what State v. Boone upheld when it narrowed the applicability of the breaking and rendering statute. Judge Duncan, you're absolutely right. It can't be the exact facts of Boone. We know that. But the exact facts of Boone actually aren't a shoplifting case. If you look at Boone, as we explain in the reply brief, the defendant charged in Boone who appealed in Boone did not commit an act of shoplifting while inside the store. His companions did. They weren't defendants in that case. And as a result of that, the Supreme Court in that decision didn't have to address the question that was subsequently addressed by SDR and Rollinson. And that question is, does an act of theft once inside a store render consent void ab initio? SDR and Rollinson interpreting and applying Boone, they excite it at length. Their decision is based extensively and almost exclusively on the principles set forth by the State Supreme Court in Boone. And they say, and I'll quote from SDR, stealing cash certainly constitutes an act sufficient to render implied consent void ab initio as contemplated by Boone. Rollinson, stealing cash and checks inside the deposit bag rendered that implied consent void ab initio. Again, the footnote is cryptic. Maybe, again, maybe other people, other judges, other courts would have decided it differently. The North Carolina Appeals Court has decided it this way. It's now black letter law in the State. As we point out in the reply brief, it's cited in treatises on State law. And that's not just any treatise. That is the primary treatise that anyone doing their online research on West law is going to look at. In addition, as we point out in the reply brief, it's cited by the State prosecutors in their appellate briefing. But with respect to Rollinson and SDR, it was my recollection that the court in both cases found that the defendant exceeded the scope of permission to enter by stealing from private offices. Is that correct? You're right. So that discussion does not appear to have affected the outcome in either case. There are absolutely alternative holdings in SDR and Rollinson. Well, what the court, I'm looking at what the court did and what it needed to do to support what it did. Well, what it did was it gave two bases for decision. It said, on the one hand, we think that the defendants here exceeded the scope of their implied consent. It said, on the other hand, even if we didn't think that, we believe these acts of theft inside the store render that consent void ab initio. I know the government would like the court to treat that as dicta, but alternative holdings are not dicta. If you look, and I apologize for not citing this case in the reply brief, but if you look at the Supreme Court's decision in McDonald Summer and Freights v. Yolo County, 477 U.S. Reporter 340 at footnote 4, the Supreme Court says there, when a state court provides two bases for decision, the federal court should treat them as alternative holdings and not disregard one of them as mere dicta. This court has applied that same principle in the Folks decision in 2006 at 454 F. 3rd 410. Alternative holdings in a prior Fourth Circuit decision cannot be properly characterized as dicta. That principle also applies in state courts. So if you look at the decision in Henri J. P. at 750 Southeastern Reporter 2nd at 543, there, one party had argued that a passage in a state appeals court decision was dicta and it should be disregarded because it resolved the question in the alternative. The appeals court disagreed and said, under the doctrine of stare decisis, the determination of a point of law by a court will generally be followed by a court of the same or lower rank if subsequent case presents the same legal problem. It just seems to me... I mean, on this law, this, it seems to me you're trying to set the intermediate appellate court decisions in tension with Boone, and I'm not sure they intend to place themselves there, but if there is such a tension, we've said in, just very recently in Aparicio Soria, we said to the extent the statutory definition of the prior offense has been interpreted by the state's highest court, that interpretation constrains our analysis of the elements of state law. That's true, but there is no tension in this case. SDR and Rollinson, on their very own terms, are explanations and applications of Boone. That is how they view themselves. They really found it necessary to note that there was no consent and therefore unlawful entry into the office, for instance. And they said it was, that's how they made it fit into Boone. Now, if they had their mind on something else, possibly that could have occurred otherwise, but that was their holding. And, of course, Boone really does categorically say it has to be without consent, doesn't it? It doesn't. It says there has to be without consent, but it explains this. The way to have an issue of doctrine is out there. It leaves it. Why don't you just characterize that, because it doesn't, it says we note in passing. It's reached its decision. And then it throws in this footnote that says there may be some fact out there. Why isn't that completely gratuitous under your analysis of the conflicting language in the Courts of Appeals decision? Even if that were completely, well. Well, it is gratuitous. They've already reached their decision. Even if it is gratuitous, the point is the North Carolina Appeals Courts haven't treated that decision as gratuitous, that language as gratuitous. Just as this Court doesn't treat straight language in Supreme Court decisions as gratuitous, as the Court has said in the passage we cite in the reply brief, well-considered dicta is followed by lower courts. And that's exactly why, even if the language in SDR and Rowlandson could in some way be considered dicta, it is a binding interpretation right now in the state of North Carolina on every state trial court judge. They are not free to disagree with the decision that the Appeals Court made in that case. And that's why we know in this case that Section 1454, as it's currently interpreted and applied in state court, is not a generic burglary offense. It's broader than that as the courts are applying it now. We see prosecutors who are relying on that in appellate briefings. We know that prosecutors can rely on that language in seeking indictments, in seeking to persuade defendants charged with indictments to plead guilty, and in seeking to persuade state trial court judges who are considering whether there's a factual basis for a plea under 1454 to accept that there is. Right now, because of these decisions, it is black-letter law in the state of North Carolina that consent can be rendered void ab initio by an act of theft committed after a person has entered a store. Again, nothing in Boone is inconsistent with that. It leaves the door open for the lower courts to develop this doctrine. The other big distinction with Aparicio Osorio, the recent in-bank case, is that there you have an initial decision by the highest court that sets out the elements of the resisting arrest offense. You then have a subsequent intermediate decision that seems to tack on the additional element that there be some degree of violence. Then you have another decision from the state's highest appeals court that clarifies, no, we were serious, these are the only elements of the offense. If there is no subsequent decision like that in this case where the state's Supreme Court has expressed disagreement with SDR and Rollinson, as a result, those cases remain on the books and remain binding on everyone in North Carolina. For that reason, it is both broader than generic burglary and outside the scope of the residual clause. I'll also make a final note that, as we point out in the briefing, this case really does raise the folly of considering these judicially added elements in the first place. If this court addressed the open question in de camp and simply relied on the text of this statute, this would be overly broad, it wouldn't be a violent felony, and there would be no need to parse the nuances of dicta versus alternative holdings in place. You agree that the Supreme Court has directed us to look at state law to interpret it in its own statutes? State law, absolutely. The question reserved in de camp is whether, when you have a statute that, on its face, defines the elements in a fashion that's overly broad, should the court go on to consider state case law? Certainly, that has often been done by the courts, but the Supreme Court reserved that question and I think noted that it is something open for further debate, discussion, and decision by the court.  This man had a bunch of very serious drug offenses, felony drug offenses. Did none of those qualify? No, they didn't, because to qualify as a serious drug offense under the Armed Career and Criminal Act, it has to be more than 10 years, none of his offenses carried that maximum. So that's why none of them qualify. So the only three that qualify are these three 1986 convictions, and I think the government agrees with that. Thank you. All right. May it please the Court. First, this Court has decided this question three times in terms of the applicability or the qualification of breaking and entering under North Carolina law for purposes of the Armed Career and Criminal Act. The most recent decision was in 2009 that affirmed, that applied Bowdoin, also Thompson, in 2005. So there are three decisions. You know, Bowdoin's pretty risky to hang your hat on. Your Honor, it remains a decision that's a published decision of this Court. Was it well analyzed? If you're going to present, rest your case there, then we have to analyze Bowdoin under DECAMP.  And does it survive? Yes, because DECAMP doesn't say anything, does not modify Taylor's, so nothing that DECAMP addresses actually modifies the requirements for generic burglary that were established under Taylor. DECAMP doesn't do that. Except the California statute didn't have an unlawful entry element. Right. As similar to North Carolina. And the argument in Bowdoin was that simply having the intent, entering with the intent to commit a felony is an unlawful entry. And I think DECAMP rejected that, because that would, otherwise it could not have held that the California statute didn't satisfy that. Your Honor, even Taylor rejected that. The language in Bowdoin was, I would, I can only describe as a little loose in terms of Yeah, but what's the rationale? In other words, the rationale seemed to be that if you're entered with an intent to commit a felony or a crime, that was sufficient to make the entry unlawful. Yes. Whereas you can enter a grocery store with the intent to hold up the cash register, and we wouldn't call that burglary, would we? No, and nor would North Carolina. Yet Bowdoin would have indicated that. Excuse me. I may have spoken too much this morning already. To answer your question, the government's point, and Your Honor is correct, that the Bowdoin language would not satisfy, the language in Bowdoin wouldn't satisfy Taylor or DECAMP, but DECAMP doesn't alter Taylor. And the government's point is simply that this Court has held this in, whether its rationale was correct or not, it's actually made this legal decision three times, and nothing in DECAMP alters Taylor. So if it's made the decision... Taylor requires unlawful entry, right? And remaining in, or remaining in. Yeah. That's right. Well, the remaining in is beyond the consent time. Basically, a burglary in the common generic sense. These two statutes, California and North Carolina, don't have the unlawful entry element for some peculiar reason in the statute.  Setting aside Boone right now, if you're just going to focus on the statute, as Bowdoin did, we supplied that element based on the object of the entry. And it seems to me that Supreme Court rejected that in DECAMP. Why didn't they? They did in DECAMP, and they did in... And if they did that, then what other rationale supports Bowdoin? The rationale that supports Bowdoin is the Boone decision, and the fact that North Carolina... Well, if it relies on Boone, then I think, you say it does rest on Boone? Well, I don't think, I don't recall that Boone was, I don't recall that Bowdoin rested on Boone. It did not. And I don't mean to suggest that the court in Bowdoin wrestled with Boone, but I'm, your Honor's question... That's a two different, you understand the difference in the approach. We need the unlawful element. And the rationale that Bowdoin used to supply that element was rejected in DECAMP. The better would be, well, the only opportunity would be if the State High Supreme Court of North Carolina said it, but you'd choose to rely on Bowdoin and say Bowdoin's still good law in view of DECAMP, and I think that'd be a hard opinion to write. Then let's turn to Boone, because... Maybe my colleagues don't think so. I didn't understand you to say that. I didn't understand you to be defending Bowdoin, per se. I understood you just to be saying that it was one of the three occasions on which the court has wrestled with a similar issue. Maybe you better focus on the other two. My colleagues may not agree with me, so... No, I understand, I understand. My point about Bowdoin is simply that it is a published decision by a panel of this Court that holds on point. Whether its rationale was correct or not, it held that the breaking or entering qualifies, and that DECAMP doesn't alter the elements that were prescribed by Taylor. That's my point, is that nothing in DECAMP changes Taylor. So you would say that we can rely on the holding of the case without agreeing with its rationale? Absolutely, because nothing changed since Taylor. In fact, I would suggest this Court sort of has to defer to Bowdoin, Thompson, and Thompson unless DECAMP changed the elements that were prescribed in Taylor, that preceded all three of them. And while DECAMP certainly has language that talks about what's required, nothing in DECAMP purports to or does, in fact, alter the reality of the elements that were prescribed in Taylor. But turning to Boone, because... Just to play this out just one second further, I think I understand what you're saying. You're saying unlawful entry was required by Taylor. That's right. That was the law. Yes. The statute omitted that element, yet we held in Bowdoin that it was satisfied and we don't need to look at the rationale. That's the holding. So that it applied Taylor and said this statute comported with Taylor as a holding. Right. And the mystery of the Holy Ghost is why. Well, and this Court did it again twice later, deferred to Bowdoin post-Taylor, and DECAMP was a question about when the modified categorical approach applies and whether it applies to an indivisible statute. The language in DECAMP did not, the Supreme Court didn't purport to alter the elements as described in Taylor, and it didn't. So the government's argument is simply that DECAMP doesn't overrule Bowdoin. It didn't change Taylor, and therefore it doesn't change Bowdoin. But even moving to the merits of the question... I hear your argument, and it's a little different from what I was pushing you into. Thank you, Your Honor. But moving to the question of the merits, of whether Bowdoin ultimately has correctly decided whether its rationale was appropriate or not, I want to quote from Boone because the defendant, I think, is attempting to obscure a little bit how clear the holding was. Not only did it hold that an unlawful or unprivileged entry or remaining in is required, but it said, The State's evidence here established that defendant entered the store at a time when it was open to the public. His entry, therefore, was with the consent implied or if not expressed of the owner. It cannot serve as a basis for a conviction for felonious entry. So whether or not this defendant was the one who stole the goods in Boone or not, the court's decision was quite clear that because he entered the store with the permission of the owner and there was no unauthorized either entry or remaining in, it doesn't satisfy the elements of breaking or entering under North Carolina law. That's a decision by the State's highest court. And the Intermediate Appellate Court, the North Carolina Court of Appeals, that has considered the question, while it has language, has used language suggesting that an intent to commit a felony is enough, in both of those cases, SDR and Rawlinson, the court held that the defendant did not have consent to enter the area in which the defendant committed the offense. So they held that it did not, consent was absent, and there is no North Carolina decision that the defendant has cited, and I haven't found one, where shoplifting qualifies. The defendant suggests over and over again that shoplifting qualifies. Only if the defendant either enters unlawfully or remains in, unlawfully or without consent. So if there is, and that was the hypothetical that the Supreme Court in Boone referred to in its footnote, and it was a footnote, but it said, as for example, it didn't even say for example, it could be void ab initio as when a defendant enters areas that he's not authorized to enter, or she, or when the defendant overstays the time of the consent. Those are the examples that were provided, both of which meet Taylor's requirement, that it be either an unlawful or unprivileged entry, or an unlawful or unprivileged remaining in. So the remaining in part of it was part of Taylor, it's part of the statute as the Supreme Court has interpreted it, and Boone is clear. And this court's decision in apparitio, the defendant suggests that the court shouldn't look at a state's interpretation in the court case law if the elements are ambiguous at all, but this court's decision in apparitio soria was after de camp and recognized that this court will defer to the state's highest court's Your honors, I'm not sure that I can articulate our argument better than simply we sort of rest on both of those, that de camp doesn't change Taylor, and therefore Bowden remains controlling, and also that even if it doesn't, the state's highest court in this case has interpreted this statute to be consistent and to define, to prohibit conduct that meets the elements of generic burglary as the Supreme Court in Taylor defined them. I'm looking at Rawlinson now, and I'm looking at the last page where they do give alternative holdings. Would you explain to me why I should disregard the alternative holdings? Your Honor. The act of stealing the cash rendered the implied consent void of initiative. Yes, Your Honor, and both in Rawlinson and in Re-SDR, the language is essentially the same. And the reason this court should not defer to that interpretation of the statute is because the Supreme Court in Boone was very clear that it requires an unlawful entry or unprivileged entry or remaining in. So it's inconsistent with Boone? It is to the extent that that language exists to say that it's enough simply to convict. That's what they had in Boone and rejected it. That's right. Now, the defendant, I would say, would say that Boone himself didn't go in and do the act of stealing. But as I just quoted from the decision that had... They described the factual circumstances that was not sufficient. Exactly. And so because the Supreme Court in Boone has said you have to have an unprivileged or unlawful entry or remaining in, and it was unequivocal on that point, then that alternative holding just doesn't... does not determine the elements for this court's analysis. And Aparicio Soria makes that quite clear, that if there is a conflict, this court defers to the state's highest court's interpretation. And... Excuse me. So for that reason, it is Boone that controls the definition of the statute or what it requires under North Carolina law, and Boone unequivocally holds that an unprivileged entry or unlawful entry is required. I'm not saying I disagree with you. I'm just saying it really makes me nervous because, as Mr. Carpenter points out, if people are being sent to prison today in North Carolina under that theory, that we're going to say, no, that's inconsistent with the Supreme Court decision. He hasn't... It's an odd situation. Well, I haven't... He hasn't cited a case where that's actually happened. So he has cited a treatise, and he has cited a prosecutor's argument that that's enough. But that's not... There's no case that has actually held that there was no... that there was consent all the way through the process, consent to enter, consent to remain in, and it was simply a shoplifting, and that was enough to satisfy the breaking or entering statute. Even a lower court in North Carolina... He may get up on rebuttal and suddenly produce some, but I haven't found them. And I don't... I think that that is the hypothetical that is posited based on this language, but it's not... There's no case where the court, certainly not the Supreme Court of North Carolina, has held that that's sufficient. And the Supreme Court has, in fact, held that that's not sufficient. So I understand the court's concern because this language is concerning if one is going to be true to Taylor, but it is not language that has been applied ever, to my knowledge, with a court not finding that there was also an unprivileged entry or remaining in. And certainly the Supreme Court of North Carolina has made clear that it wouldn't be enough. If Your Honors don't have further questions, the government requests that the court affirm the defendant's sentence in this case. Thank you. Thank you. I want to make a few points in response. First, to start with what the court just left off on bouncing off Judge Traxler's question, I'm also not aware of any published decision out there that has applied this directly in the context of shoplifting. But that's not the end of the day. As the court just recently said in the in-bank decision of Aparicio Surio, the universe of published convictions, or the set of published convictions, is, quote, a skewed universe in looking at all of the convictions that can be obtained and are obtained under a particular state statute. What that reflects is the reality that not every guilty plea results in a published opinion or any other way that we can track exactly what conduct is being prosecuted in state court under Section 1454. What the in-bank court says there is we have to look at the elements as defined by state law, not just the conduct that presents itself in the state published court's opinions. If we were looking just at the conduct in the published opinions, the in-bank decision in Aparicio Surio would have come out the other way if we were looking just at the conduct. The court looks at the elements as they're defined by state law. As they are articulated by the state's highest court. And that's the second point I want to respond to. That is true, sort of. And I want to take the Supreme Court's decision in James v. United States from 2007. That relied on the state Supreme Court case law interpreting the Florida attempted burglary statute. And the Supreme Court says there, while the statutory language by itself is overly broad, the Florida Supreme Court has considerably narrowed its application in the context of attempted burglary, requiring an overt act directed toward entering or remaining in a structure or conveyance. So under Judge Niemeyer, your questions, Judge Duncan's questions, looking just at the state Supreme Court language, that should have been the end of the day. The state Supreme Court had added this overt act element. That's enough. But the Supreme Court went on to say in the very next sentence, Florida's lower courts appear to have consistently applied this heightened standard. And then it string cites a couple of state intermediate appeals court's decisions. The clear implication of this language from James is that if you have a judicially added element of an offense by a state Supreme Court and then the lower courts broaden that offense, that has to be considered. It can't be ignored. And the reason is exactly what Judge Traxler is saying. The state court judges, the state court prosecutors, the state court criminal defense lawyers, they're all bound by these holdings of the state intermediate appeals court. They're bound to follow those decisions. If you really go back to law schools, the holding of a case is what disposed of the case and the circumstances of the case. And of course, in both these state intermediate decisions, the holding was that it was based on an unconsented being in it. The alternative might suggest that you wouldn't need that, but the actual holding, when you get to first year of law school, they try to teach you what a holding is. Well, Your Honor, the folks on the Supreme Court are going to have to go back to law school because they disagree with that interpretation. And the problem with it, Your Honor, the problem with defining a holding so narrowly is that if that's the case, there is no holding in SDR and Rollinson. You have two alternatives. Either we think they went beyond the scope of their implied consent, but if not, it was rendered void of issue. They did say even if we assume not. These are alternative holdings. If only the necessary holding controls, then there is no holding period. Both of those can be disregarded as dicta. That's why, again, 477 U.S. 340, page 346 footnote 4, when a state court provides two bases for decisions, one of them can't be disregarded as dicta. United States v. Folks, 454 F. 3rd 410, Judge King wrote for this court, the alternative holding in a prior Fourth Circuit decision cannot properly be characterized as dicta. It's black-letter law. Alternative holdings bind lower courts. They have to be followed. The other point I would make with respect to Boone, Ms. Ray characterized it as unequivocal in saying that this type of shoplifting case wouldn't be prosecuted, or couldn't be prosecuted under Section 1454. The problem, again, as we've discussed, the court is equivocal. It adds a footnote that says, in some other circumstances that we may encounter in cases in the future that we don't see in this case right now, there may be circumstances where an initial consent to enter is rendered void ab initio. The state courts have taken that language and said our best interpretation of Boone and of Section 1454 is that an act of theft renders that consent void ab initio, and that now binds the state courts. I would also note that in interpreting void ab initio... It's quite different to get dressed up in a uniform and walk into the White House with consent of the guards, steal your way in there, and there's nominal consent there. That would be different from a grocery store holding itself open to the public. And that brings us exactly to the facts of Rollinson. There we have a video store held open to the public. The defendant walks in, and the only... To the extent he exceeded the scope of his implied consent, it was because he walked into the employees-only office. I would submit that is why the court in Rollinson added the language there, because it probably felt that it was a pretty shaky decision to say, to analogize walking into an employees-only office. We don't know why it added that. That's true, but it did have... Consistently applied in the Supreme Court's language. It's not the same thing as too anomalous. Please let me finish. Thank you. Consistently applied really isn't the same as too anomalous alternative holdings by two confused courts of appeals. Well, as confused as they may have been, they're binding on the state judges. And one thing I would point out, if you'd let me add it just here at the end, is that those cases aren't writing on a blank slate with respect to state law. If you look at the Markup Plus decision that we cite at page 9 of the reply brief, that's Judge Winn, when he was on the state appeals court, explaining conduct that may void implied consent. It was in the context of trespass, but there's no reason this principle shouldn't apply to the consent to enter under this statute. It includes a broad array of things, including disorderly or criminal conduct, non-permitted solicitation, et cetera. So these cases aren't writing on a blank slate. I thank the Court for its time. Thank you. I'll tell you, Mr. Carpenter and Ms. Ray, those were outstanding arguments. You really do our Court proud when you appear before us. I'll ask the clerk to adjourn court, and then we'll come down and get counsel. This honorable Court stands adjourned, sine die. God save the United States and this honorable Court.
judges: William B. Traxler, Jr., Paul V. Niemeyer, Allyson K. Duncan